Son
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MICHAEL EDWARD JOHNSON,** | |
| **Plaintiff,** | **8:23CV216** |
| vs. | **MEMORANDUM AND ORDER** |
| **UNION PACIFIC RAILROAD CO.,** | |
| **Defendant.** | |

This matter is before the Court on the Motion to Compel (Filing No. 61) and Motion to Exclude (Filing No. 65) filed by Plaintiff, Michael Johnson. Both motions concern doctors utilized by Defendant, Union Pacific Railroad Co. ("Union Pacific"), in this case and several other similar cases—Dr. John Holland, Dr. Matthew Hughes, and Dr. John Charbonneau—to make fitness for duty determinations of Union Pacific employees without examining them. In Plaintiff's motion to compel, he seeks the Court to compel Union Pacific's agreements with, and payments to, those doctors. Plaintiff also seeks to compel documents related to Union Pacific's agreements with, and payments to, two third-party consultants, Dr. T. Scott Diesing, a neurologist at the University of Nebraska Medical Center ("UNMC"), and Dr. Reed Wilson. In Plaintiff's Motion to Exclude, he seeks to exclude Dr. Holland, Dr. Hughes, and Dr. Charbonneau as Union Pacific's expert witnesses because they failed to write written reports disclosing their opinions under Rule 26 of the Federal Rules of Civil Procedure. (Filing No. 66 at pp. 1-2). For the following reasons, the Court will grant Plaintiff's motion to compel, in part, and deny the motion to exclude.

## BACKGROUND

Plaintiff commenced this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 and 12112(b)(6), alleging Union Pacific utilized its fitness-for-duty procedure ("FFD") to impose work restrictions prohibiting him from performing his job duties, resulting in Union Pacific removing him from service. (Filing No. 1). Defendant hired Plaintiff in September 2002, and he most recently worked as a Manager of Operating Practices, which required him to oversee and manage approximately 45 locomotive engineers. (Filing No. 1 at p.

7). On May 4, 2016, Plaintiff suffered a ruptured cerebral aneurysm outside of work, requiring surgery on May 10, 2016. Within two months of surgery, Plaintiff's doctors considered Plaintiff to be fully recovered, and on July 13, 2016, Plaintiff's treating neurologist released him to go back to work at full capacity as of July 26, 2016. (Filing No. 1 at p. 8). However, Union Pacific required Plaintiff to go through an FFD. Dr. Holland reviewed Plaintiff's medical records, but did not examine Plaintiff, and on July 26, 2016, issued an FFD concluding Plaintiff was at permanent increased risk of seizures, and imposed permanent sudden incapacitation work restrictions that prevented him from returning to his position. (Filing No. 1 at pp. 8-9).

In its answers to interrogatories, Union Pacific identified Dr. Hughes, Dr. Charbonneau, and Dr. Holland as individuals with "discoverable information regarding Plaintiff's fitness-for-duty process and evaluation," and "information regarding [their] review of Plaintiff's medical records and information, Plaintiff's health condition, and the medical risks and restrictions applicable to Plaintiff." (Filing No. 63-3 at pp. 3-4). Union Pacific specifically answered that Dr. Holland "in conjunction with Associate Medical Director, Dr. John Charbonneau, determined that Plaintiff was unable to safely perform the essential functions of his position." (Filing No. 63-3 at pp. 7-8). During Dr. Charbonneau's deposition, he testified that Dr. Hughes "started" Plaintiff's FFD, then "sent it to Dr. Holland, and then Dr. Holland sent his final chief medical officer determination to Rhonda and me for follow-up action[.]" (Filing No. 63-5 at p. 16). Dr. Charbonneau testified his "only significant touch of this case was, after the fitness-for-duty decision had been made, Dr. Holland asked me to be the one to call the employee and notify him of the fitness-for-duty determination. . . . So my -- my role in the case was just to pass on the decision that Dr. Hughes and Dr. Holland had collaboratively made." (Filing No. 63-5 at p. 13).

In Union Pacific's Expert Disclosures, (Filing No. 63-4), it identified T. Scott Diesing, M.D., a neurohospitalist at UNMC, as an expert and disclosed his opinions in an expert report. Union Pacific further identified Dr. Holland, Dr. Charbonneau, and Dr. Hughes as experts "expected to testify regarding [their] knowledge of Union Pacific's fitness-for-duty policies and procedures as well as [their] involvement in the Plaintiff's fitness-for-duty evaluation, review of Plaintiff's medical records and health information, and [their] findings as stated in the Plaintiff's Medical Comments History and other documents produced in this case," and to provide testimony "regarding [their] diagnosis and opinions about Plaintiff's health condition, the

2

restrictions placed upon Plaintiff by Union Pacific, and the underlying rationale for those restrictions." (Filing No. 63-4 at pp. 2-4). Dr. Holland, Dr. Charbonneau, and Dr. Hughes did not disclose written expert reports during the pendency of this case.

During their depositions, Dr. Charbonneau and Dr. Holland testified they had entered into contracts with Union Pacific both while employed with Defendant and for work during this litigation. Dr. Charbonneau testified he previously had a consulting agreement with Union Pacific under which he was guaranteed a minimum of 100 hours per month at $180 per hour, but under his most recent contract he just bills on an hourly basis without a 100 hour minimum guarantee. (Filing No. 67-5 at pp. 6-7). Dr. Charbonneau further testified Union Pacific paid him $300 per hour for deposition preparation, $500 per hour for deposition testimony, and "$600 or maybe $700 per hour" for trial testimony. (Filing No. 63-5 at p. 8). According to Dr. Holland, he retired from his position with Union Pacific in 2019, but has testified as an expert witness on behalf of Union Pacific in approximately 20 cases per year since his departure, and entered into a "Letter of Engagement" specifically for this case. Dr. Holland testified he was being paid $400 hourly for review and preparation, and $500 for deposition and trial testimony. (Filing No. 63-6 at pp. 6-11). Dr. Hughes similarly testified he had a contract with Union Pacific while he was employed as an Associate Medical Director, and that under his contract he was paid $172 per hour for work on fitness for duty determinations, $400 per hour for work during litigation, and Union Pacific has agreed to pay him $500 per hour for work during litigation. (Filing No. 63-7 at pp. 4-5).

Additionally, pursuant to an agreement between UNMC and Union Pacific, UNMC physicians agreed to provide consulting work on behalf of Union Pacific at a rate of $250 per hour and to provide "testimony when needed resulted to consulting services and advice." (Filing No. 63-10 at p. 10). The agreement further provides, "UNMC staff providing this consultation will agree to provide testimony if requested by the UPRR Law Department, if needed for litigation related to the consultation, but this will be by separate arrangement and outside of this consulting agreement." (Filing No. 64-1 at pp. 2-3). Dr. Diesing testified he has performed seven to nine file reviews for Union Pacific under this agreement, and has been retained as an expert witness by Union Pacific thirteen times, although he has also declined such retention on a handful of occasions. (Filing No. 63-9 at pp. 5-6, 9).

While he was Chief Medical Officer for Union Pacific, Dr. Holland used third-party consultants, such as Dr. Wilson, to assist with fitness for duty reviews. Dr. Wilson performed a file review in this case after Plaintiff requested reconsideration of Defendant's FFD. Union Pacific paid Dr. Wilson $600 per hour as a consultant. Dr. Holland testified he and Union Pacific "sent [Dr. Wilson] dozens of patients' cases" each year for the three- or four- years Dr. Wilson consulted for Union Pacific. (Filing No. 63-6 at p. 23).

During discovery, Plaintiff served requests for production of documents upon Union Pacific seeking documents related to contracts or agreements between Union Pacific and its expert witnesses. Specifically, Plaintiff's Requests for Production (RFP) Numbers 21-22 sought: "All documents, including emails, related to and including any agreement(s)" between Union Pacific and Dr. Holland (RFP 21), and Union Pacific and Dr. Charbonneau (RFP 22), regarding those individuals' retention as a witness in this case, "including a listing of all hours worked and payments provided" to those doctors for their work in this case. (Filing No. 63-1 at pp. 16-17). In RFP 23 Plaintiff requested "All documents, including emails, related to and including any contract(s), agreement(s), or understanding(s) between any witness listed in either parties' Rule 26 disclosures regarding the former's retention as a witness in this case, including a listing of all hours worked and payments provided to the witness for their work in this case." (Filing No. 63-1 at p. 17). Union Pacific objected to these requests as being overly broad, unduly burdensome, vague, and not proportional to the needs of the case; Union Pacific further objected to the extent the requests sought documents and information protected from disclosure by the attorney-client or work-product privileges. (Filing No. 63-1 at pp. 16-17).

Plaintiff also requested "Documents demonstrating all compensation and bonuses paid to Union Pacific's current or former Chief Medical Officers involved in the fitness for duty determination in this case, from 2014 to the present," (RFP 31), and "Documents demonstrating all compensation and bonuses paid to Union Pacific's current or former Associate Medical Directors involved in the fitness for duty determination in this case, from 2014 to the present" (RFP 32). (Filing No. 63-2 at pp. 4-5). Union Pacific objected to these requests as being "overly broad, irrelevant, unduly burdensome, and not proportional to the needs of this case to the extent it calls for production of personnel information and documents that have no relevance to this case and that would reveal private and confidential information regarding individuals who are not parties to this lawsuit." Union Pacific further objected that "disclosure of this

information constitutes an unwarranted invasion of privacy of persons who are not parties to this lawsuit," and Plaintiff's request for documents over a ten-year period includes documents irrelevant to Plaintiff. Union Pacific similarly objected to the extent the requests sought documents and information protected from disclosure by the attorney-client or work-product privileges. (Filing No. 63-2 at pp. 4-5).

Plaintiff further requested "the contract(s), agreement(s), or understanding(s)" between Union Pacific and "its retained expert witness, and/or their employer or organization, governing their work in this case," seeking documents regarding Dr. Diesing and UNMC (RFP 29); and documents demonstrating payments to Dr. Diesing and UNMC "from 2014 to the present, for work as a consultant or expert witness related to fitness for duty determinations by Defendant." (RFP 30). (Filing No. 63-2 at pp. 3-4). Union Pacific similarly objected to these requests as being overly broad, unduly burdensome, vague, and not proportional to the needs of the case and on potential privilege grounds.

Plaintiff also sought several documents from Union Pacific regarding Dr. Wilson's consulting relationship. Specifically, Plaintiff requested, "A listing of all cases where Defendant used Dr. Reed Wilson as a consultant or expert witness regarding a fitness for duty determination from 2014 to the present" (RFP 25); "All reports or opinions provided by Dr. Reed Wilson to Defendant regarding a fitness for duty determination from 2014 to the present" (RFP 26); and "All documents related to any contract(s), agreement(s), or understanding(s) between Defendant and Dr. Reed Wilson (or his office) for his work with Defendant's Health and Medical Services Department, including work on fitness for duty determinations or as an expert witness, and a listing of all payments made to Dr. Wilson (or his office) for such work from 2014 to the present" (RFP 27). (Filing No. 63-8 at pp. 3-4). Union Pacific objected to RFP 25 as seeking documents "not reasonably calculated to lead to the discovery of admissible evidence." Union Pacific objected to RFPs 26 and 27 as being "overly broad, vague, and not proportional to the needs of the case," and also as "an invasion of the fundamental constitutional privacy rights of employees who are not parties to this action." Union Pacific additionally objected to each of the foregoing RFPs to they extent they request disclosure of information protected by the attorney-client privilege and/or the work product doctrine. (Filing No. 63-8 at pp. 3-4).

The parties' meet and confers to resolve their dispute over the above document requests were unsuccessful. (Filing No. 63 at p. 1). The Court's attempt to resolve the dispute informally during a telephone conference was similarly unsuccessful, (Filing No. 55; Filing No. 58), and Plaintiff was provided with leave to file a motion to compel. Plaintiff now moves the Court for an order compelling Union Pacific to provide documents responsive to the RFPs as outlined above. Plaintiff asserts that this case depends on whether Union Pacific's decision to remove him from work was medically necessary, and that Union Pacific's five medical witnesses expected to testify in support of its decision all have agreements with Defendant for their compensation. Plaintiff asserts those agreements and payments are relevant to their credibility. (Filing No. 62 at pp. 3, 10-14). Plaintiff additionally argues such contracts and payments should be produced as a discovery sanction due to Union Pacific's continued strategy to "bypass" Rule 26(a)(2)(B)'s requirement for retained experts to disclose written reports. (Filing No. 66 at pp. 14-16).

Plaintiff also seeks to exclude the opinions of Dr. Holland, Dr. Charbonneau, and Dr. Hughes, asserting they are retained expert witnesses that failed to properly provide written reports disclosing their opinions under Rule 26. (Filing No. 66 at pp. 1-2). Plaintiff contends Dr. Holland was retained as an expert specifically for this case, and Dr. Charbonneau has an on-going contract with Union Pacific to provide expert testimony, and thus are retained experts within the ambit of Rule 26(a)(2)(B) requiring disclosure of a written expert report. (Filing No. 66 at pp. 4, 7). Plaintiff asserts Dr. Hughes should also be excluded because his disclosure states "a high-level overview of [his] expected testimony, without any specifics of [his] actual opinions." (Filing No. 66 at p. 7).

Union Pacific opposes both motions. Union Pacific directs the Court to former Magistrate Judge Bazis's determination during a telephonic discovery dispute conference in *Meza v. Union Pacific R.R.*, No. 8:22-cv-00102-RFR-SMB at Filing No. 96, in which she determined Union Pacific was not obligated to produce the same consulting contracts. (Filing No. 69 at p. 1). Union Pacific contends the agreements are not relevant because they were entered before the doctors "ever reviewed a single one of [Plaintiff's] medical records and they do not reference [Plaintiff] or any other Union Pacific employee." Union Pacific further asserts Plaintiff already has the information he seeks because the doctors explained their pay structures and compensation during their depositions. (Filing No. 69 at p. 1). Union Pacific likewise

argues its agreements with UNMC and Dr. Wilson over a ten-year period are irrelevant and implicate privacy interests of non-parties. (Filing No. 69 at p. 2).

As to Plaintiff's motion to exclude, Union Pacific points out that Plaintiff himself identified Dr. Holland and Dr. Charbonneau as "decisionmakers" and "hybrid witnesses," which means they were not required to author written reports under Rule 26(a)(2)(B). (Filing No. 71 at pp. 1-2). Similarly, during his employment with Union Pacific, Dr. Hughes performed a review of Plaintiff's medical records and an initial draft of the FFD determination, and Union Pacific therefore contends he is a fact witness who, by the nature of his training and involvement in the case, is also an expert. (Filing No. 71 at pp. 4, 6). Union Pacific further contends Plaintiff's claims of prejudice or unfair surprise about the doctors' opinions falls flat because all three doctors were deposed in this case, during which Plaintiff could have inquired about their opinions. (Filing No. 71 at p. 2).

## I. Plaintiff's Motion to Compel

### a. Standards Governing Discovery

Federal Rule of Civil Procedure Rule 26 sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad," *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D.S.D. 2015), and includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). If the discovery sought appears relevant on its face, "the party resisting discovery has the burden to establish that the discovery is not relevant or is 'of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Turner v. Moen Steel Erection, Inc.*, No. 8:06CV227, 2006 WL 3392206, at *3 (D. Neb. Oct. 5, 2006)

(quoting *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006)); see also *Allstate Ins. Co. v. Hewlett-Packard Co.,* No. 8:08CV39, 2010 WL 2813659, at *2 (D. Neb. July 16, 2010) ("If this relevance threshold is satisfied, the party resisting discovery bears the burden of showing its objections are valid."). "Evidence of bias is relevant to impeach a witness." *Russell v. Anderson*, 966 F.3d 711, 730 (8th Cir. 2020) (citing *United States v. Abel*, 469 U.S. 45, 51 (1984); see also *Johnson v. Brewer*, 521 F.2d 556, 561 (8th Cir. 1975) ("The credibility of witnesses is always a material issue, so the only question of materiality or relevance when evidence is offered to impeach for bias is whether the evidence tends in reason to demonstrate the existence of some fact, state of mind or condition that a reasonable person would take into account in assessing the credibility of the witness under attack.").

"The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(1), advisory committee's notes to 2015 amendment). And because discovery rules should " 'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." *Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2022 WL 3718115, at *5 (D. Neb. Aug. 29, 2022) (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)). The court has broad discretion to limit discovery and decide discovery motions. *Wilbur-Ellis Co. v. Gompert*, No. 8:21CV340, 2023 WL 6038022, at *1 (D. Neb. Sept. 15, 2023) (citing *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)).

**b. Union Pacific's Agreements with Dr. Holland, Dr. Charbonneau, and Dr. Hughes**

Plaintiff requests consulting agreements and payment information between Union Pacific and Dr. Holland, Dr. Charbonneau, and Dr. Hughes. Union Pacific objects to producing such documents, arguing that information is not relevant or proportional to the needs of the case; the witnesses have already testified regarding their payments from Defendant and that disclosure would violate their privacy; and former Magistrate Judge Bazis previously ruled that Union Pacific did not have to produce the agreements in a different case, *Meza v. Union Pacific R.R.*, No. 8:22-cv-00102-RFR-SMB at Filing No. 96.

The Court finds the reasoning and conclusions of the Special Master in *Hurd v. Union Pac. R.R. Co.*, No. 8:23CV201, 2024 WL 4651804 (D. Neb. Nov. 1, 2024) to be persuasive and nearly directly on point to the dispute before the Court. In *Hurd*, the plaintiff sought to compel Union Pacific to produce Dr. Charbonneau and Dr. Holland's consulting agreements, over essentially the same objections lodged by Union Pacific in this case. See *id.* This Court concurs with the Special Master's conclusion that the consulting agreements of Union Pacific's expert witnesses are relevant because, at a minimum, they could demonstrate the witness's biases. The "credibility of witnesses is always a material issue," *Brewer*, 521 F.2d at 561, and "[e]vidence of bias is relevant to impeach a witness." *Anderson*, 966 F.3d at 730. True, as was the case in *Hurd*, the agreements do not directly reference Plaintiff or any other individual plaintiff; however, they nevertheless pertain to the "witnesses' potential motivation to provide favorable evaluations and testimony to Union Pacific." *Hurd*, 2024 WL 4651804, at *2. Additionally, as the Special Master recognized, the mere fact the witnesses have already testified regarding the agreements in their depositions does not relieve Union Pacific of its duty to fully respond to written discovery requests. See *id.*

Union Pacific relies on former Magistrate Judge Bazis's ruling in *Meza* that such agreements do not need to be produced by Union Pacific. See Filing No. 96 in Case No. 8:22-cv-102. However, Judge Bazis's ruling was a tentative one made in the context of a discovery dispute telephone conference; she provided the plaintiff with leave to formally brief the issue, which the plaintiff declined to do and instead filed an objection. (See Filing Nos. 96-102 in Case No. 8:22-cv-102). The district judge affirmed the ruling upon a deferential review because of the great discretion afforded magistrate judges in resolving discovery matters. See Filing No. 123 in Case No. 8:22-cv-102. The outcome in *Meza* is neither determinative nor binding upon the Court in this case. More importantly, as pointed out by the Special Master in *Hurd*, Judge Bazis's ruling "was based in large part on the fact that the wording of that plaintiff's discovery requests did not actually seek the agreements themselves," an error that Plaintiff has since corrected. See *Hurd*, 2024 WL 4651804, at *2 (quoting *Meza*, No. 8:22-cv-102, Filing No. 104 at 21) (stating the "bigger concern" is that the discovery requests relate to job descriptions rather than consulting agreements)).

Finally, Union Pacific's stated concerns about the doctors' privacy interests do not outweigh or prohibit Plaintiff from discovering the requested consulting and payment

9

information. Union Pacific is correct that requests for "nonparty personnel information" require the plaintiff to show that the value of the requested discovery outweighs the affected individuals' privacy interests. See *Case v. Platte Cnty.*, No. 8:03CV160, 2004 WL 1944777, at *3 (D. Neb. June 11, 2004) (citing *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997)). But again, as the Special Master in *Hurd* recognized, Plaintiff's requests are narrower in that he seeks only information relating to pay arrangements with the critical expert witnesses in this case, not entire personnel files for whole groups of individuals unassociated with the case. Any intrusion on these witnesses' privacy interests in their agreements and fees with Union Pacific is outweighed by the potential value of the discovery to Plaintiff's case. Accordingly, the Court will grant Plaintiff's motion requesting agreements and payments as to Dr. Holland, Dr. Charbonneau, and Dr. Hughes.

### c. Union Pacific's Agreements with Dr. Diesing and UNMC

Plaintiff also requests production of documents related to consulting agreements between Union Pacific and UNMC and Dr. Diesing, wherein Dr. Diesing provided consulting services and testified as an expert witness in various cases, including this case. Union Pacific argues that ten years' worth of payment information is irrelevant; that contracts between Union Pacific and UNMC—rather than between Dr. Diesing himself—are not relevant or proportional to the needs of the case; and that the information implicates privacy concerns. For the same reasons discussed above, the Court finds the information requested by Plaintiff is relevant to the credibility and any potential bias of Dr. Diesing. While Union Pacific contends its contract with UNMC cannot be relevant to Dr. Diesing's testimony, the Court is not convinced that Plaintiff should be foreclosed from exploring that avenue of discovery and assessing any potential bias potentially attributable to Dr. Diesing from the financial arrangement between his employer and Union Pacific. Also as discussed above, while similar privacy interests are implicated, Plaintiff's request is limited to seeking payments, rather than broadly seeking all personnel information. See *Hurd*, No. 8:23CV201, 2024 WL 4651804 (ordering Union Pacific to produce consultancy arrangements or agreements and payments as to Dr. Diesing and UNMC).

### d. Discovery Requests Regarding Dr. Wilson

10

Plaintiff also seeks documents regarding Dr. Wilson's consulting relationship with Defendant, including a list of cases where Union Pacific used Dr. Wilson as a consultant or expert witness for FFDs from 2014 to the present (RFP 25); all his reports or opinions authored on FFD for Union Pacific in that time period (RFP 26); and agreements or contracts with Union Pacific for his work, including on FFD, as well as payments (RFP 27).  (Filing No. 63-8 at pp. 3-4).

Again, for the same reasons outlined above, the Court finds Union Pacific's contracts and payments to Dr. Wilson for his work are relevant to his credibility and potential bias. Therefore, the Court will similarly order Union Pacific to produce documents responsive to those requests.  However, the Court will not order Union Pacific to provide documents responsive to RFPs 25 or 26, which requested that Union Pacific provide a "list" of all the cases wherein Union Pacific utilized Dr. Wilson over a ten year period, and production of all his reports or opinions regarding FFD over a ten year period, as such requests are overbroad, not proportional to the needs of the case, and, as to RFP 26, request production of documents containing information regarding medical records and personal health information of dozens of Union Pacific employees who are not a party to this case.

**II.     Plaintiff's Motion to Exclude**

    a.  **Standards Governing Expert Disclosures**

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides disclosure requirements for expert witnesses.  "For a witness retained or otherwise engaged to provide expert testimony in litigation," Rule 26(a)(2)(B) requires the witness to provide a written report, "signed by the witness, providing prescribed, detailed information."  See *Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023).  For experts who are not required to provide written reports, Rule 26(a)(2)(C) requires a "considerably less extensive" summary disclosure of the opinions to be offered.  *Id.* (citing Rule 26 advisory committee note to 2010 amendment).  This second category of "hybrid witnesses" need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)-(D).

The Eighth Circuit Court of Appeals discussed that Rule 26(a)(2)(C), which was added in 2010, was intended to address the confusion that had arisen among courts "as to whether and when a treating physician witness must be disclosed and provide a written report under Rule 26(a)(2)(B)." *Friesen*, 79 F.4th at 943. However, the Eighth Circuit recognized Rule 26(a)(2)(C) still "leaves unanswered the question whether a treating physician who will testify as an expert must be disclosed under Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." *Id.* The Eighth Circuit concluded the answer "does not turn on whether the treating physician expert was 'retained' or 'nonretained,'" but instead concluded "that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Id.* (quoting *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734-35 (7th Cir. 2010)).

As to the sufficiency of disclosures of non-retained experts, Rule 26(a)(2)(C) requires more than a general identification of the subject matter of the non-retained expert's testimony; it also requires disclosure of the pertinent facts and opinions to which the expert will testify. See Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring disclosure of "the subject matter on which the witness is expected to present [expert] evidence"); Fed. R. Civ. P. 26(a)(2)(C)(ii) (requiring disclosure of "a summary of the facts and opinions to which the witness is expected to testify"). The Rule requires "'formal disclosure' of experts because 'knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.'" *Dey v. Coughlin*, No. 19-00318-CV-W-ODS, 2019 WL 9656363, at *1 (W.D. Mo. Nov. 8, 2019) (quoting *Lidge v. Sears, Roebuck & Co.*, No. 03-0024-CV-W-REL, 2004 WL 1151986, at *5 (W.D. Mo. Apr. 29, 2004)). Thus, a disclosure that "merely stat[es] the topic that will be discussed at a high level and/or identif[ies] documents containing information consistent with the opinion testimony to be offered" is insufficient; instead, the "disclosure must outline the main points of the anticipated testimony and inform the other side of the factual and opinion testimony of the non-retained expert so that the other side may prepare for trial." *Johnson v. Friesen*, No. 8:19-CV-322, 2022 WL 3108087, at *3 (D. Neb. Aug. 4, 2022), *aff'd,* 79 F.4th 939 (8th Cir. 2023) (internal citations omitted).

b. **Application to Dr. Holland, Dr. Charbonneau, and Dr. Hughs**

Plaintiff contends the opinions of Dr. Holland, Dr. Charbonneau, and Dr. Hughes must be excluded because they are retained expert witnesses that failed to properly provide written reports disclosing their opinions under Rule 26.  (Filing No. 66 at pp. 1-2).  Plaintiff contends Dr. Holland was retained as an expert specifically for this case, and Dr. Charbonneau has an on-going contract with Defendant to provide expert testimony, and thus are retained experts within the ambit of Rule 26(a)(2)(B) requiring disclosure of a written expert report. (Filing No. 66 at pp. 4, 7).  Plaintiff asserts Dr. Hughes should also be excluded because his disclosure states "a high-level overview of [his] expected testimony, without any specifics of [his] actual opinions." (Filing No. 66 at p. 7).

In this case, the Court finds Dr. Holland, Dr. Charbonneau, and Dr. Hughes are all "hybrid" or "fact" witnesses who also posses specialized knowledge, and thus were not required to disclose a written report under Rule 26(a)(2)(B).  As the Eighth Circuit has explained, the question does not turn on whether the witness is "retained" or "nonretained."  See *Friesen*, 79 F.4th at 943.  Instead, the Court looks to when the treating physician made his or her determination—if the opinions and determinations were made in the course of providing treatment, then no report is required.  See *id.*  All three doctors reviewed Plaintiff's medical files in 2016 during the FFD determination at issue in this case, and arrived at certain opinions and conclusions at that time.  During Dr. Charbonneau's deposition, he testified that Dr. Hughes "started" Plaintiff's FFD, then "sent it to Dr. Holland, and then Dr. Holland sent his final chief medical officer determination to Rhonda and me for follow-up action[.]" (Filing No. 63-5 at p. 16).  Dr. Charbonneau testified his "role in the case was just to pass on the decision that Dr. Hughes and Dr. Holland had collaboratively made." (Filing No. 63-5 at p. 13).  During Dr. Charbonneau's deposition, the following exchange took place:

> Q. Doctor, is it your understanding that you are providing expert testimony in this case?
> . . .
> A: I'm always confused by that -- that term . . . about "expert." I'm ready to speak to what I did throughout the course of [Plaintiff's] case. I have, I think, just basically one touch of the case where I made a phone call to him. So I don't know if that qualifies me as a medical expert here, but I have looked at all the documentation in his file, and I'm ready and prepared to talk about it, you know, depending on your questions.
> Q. Okay. So you don't have an understanding one way or the other whether you're expected to provide expert testimony in this case; is that what I understand, Doctor?

> . . .
> A.  I'm certain that I'm at least a fact witness because I was involved in the process. . . .

(Filing No. 67-5 at pp. 4-5).  This exchange reflects Dr. Charbonneau's own understanding that he is a "fact witness" because he was "involved in the process."  Because these three witnesses are experts that formed opinions during Plaintiff's FFD determination at issue in this case, Defendant properly disclosed these witnesses under Fed. R. 26(a)(2)(C) rather than Rule 26(a)(2)(B).

The Court also finds that, while Defendant's disclosures under Fed. R. 26(a)(2)(C) for those three witnesses does leave something to be desired, exclusion of the witnesses' testimony is not warranted.  Rule 26(a)(2)(C) requires a party to disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify."  For all three witnesses, Defendant identified them as experts "expected to testify regarding [their] knowledge of Union Pacific's fitness-for-duty policies and procedures as well as [their] involvement in the Plaintiff's fitness-for-duty evaluation, review of Plaintiff's medical records and health information, and [their] findings as stated in the Plaintiff's Medical Comments History and other documents produced in this case," and to provide testimony "regarding [their] diagnosis and opinions about Plaintiff's health condition, the restrictions placed upon Plaintiff by Union Pacific, and the underlying rationale for those restrictions."   (Filing No. 63-4 at pp. 2-4).  Defendant's disclosures are somewhat generic and could apply to any of the dozens of plaintiffs who have filed similar actions against Union Pacific for ADA violations arising out of its FFD process.  See, e.g., *Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1060 (S.D. Iowa 2013) ("[W]hen a party merely states the name of the witness along with the witness' connection to the case, or where the party solely refers to medical or similar records that have already been produced, without providing a summary of the witness' expected testimony, the party is not in full compliance with the disclosure requirements found in Rule 26(a)(2)(C)"); *Friesen*, No. 8:19-CV-322, 2022 WL 3108087, at *3 (finding a disclosure that "merely stat[es] the topic that will be discussed at a high level and/or identif[ies] documents containing information consistent with the opinion testimony to be offered" is insufficient).

Nevertheless, even if the Court were to consider Union Pacific's disclosures deficient, "[E]xclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer v.*

14

*Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022). Before excluding evidence, the Court must consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* at 644-45. Even if a disclosure is inadequate, the complaining party must articulate how it was (or will be) prejudiced by the late disclosure. *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 409 (8th Cir. 2023).

Here, Plaintiff has little basis to claim any unfair surprise and prejudice as to any of the three witnesses' opinions. Even in filing his Complaint, Plaintiff identified these same doctors as the "decisionmakers" or "bad actors" responsible for the allegedly discriminatory FFD. It is those doctors' very decisions and opinions regarding Plaintiff's restrictions that Plaintiff claims supports his ADA claim. Additionally, as Union Pacific points out, Plaintiff had the opportunity to depose all three doctors during this case, during which he could have explored their opinions made when making Plaintiff's FFD. There is no basis on the record to conclude Plaintiff was prejudiced or will unfairly be surprised warranting exclusion of those doctors as witnesses. However, the Court leaves the parties with the caveat that these doctors' opinions are strictly limited to those opinions and conclusions they formed during their "treatment" or their review of Plaintiff's medical records contemporaneous with Plaintiff's FFD. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion to Compel (Filing No. 61) is granted, in part, and in part denied as set forth above.
2. Plaintiff's Motion to Exclude Dr. Holland, Dr. Hughes, and Dr. Charbonneau as Expert Witnesses (Filing No. 65) is denied.

Dated this 17th day of March, 2025.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge